# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

MARLENE S. MILLER,           :

       **Plaintiff**     :     **CIVIL ACTION NO. 3:11-0317**

     **v.**           :        **(SLOMSKY, D.J.)**
                                **(MANNION, M.J.)**

POCONO RANCH LANDS    :
PROPERTY OWNERS
ASSOCIATION, INC., KATHLEEN  :
SIMONCIC, ROY BORGFIELD,
PAUL D. MENDITTO, DAVID    :
CAVANAUGH, LEHMAN
TOWNSHIP PLANNING       :
COMMISSION, RICHARD C.
VOLLMER,                :

      **Defendants**    :

## <u>REPORT AND RECOMMENDATION[1]</u>

     Pending before the court are: (1) the Association defendants' motion to dismiss the plaintiff's third amended complaint, (Doc. No. 50); and (2) the Lehman Township defendants' motion to dismiss the plaintiff's third amended complaint, (Doc. No. 52). Based upon the court's review of the plaintiff's third amended complaint, as well as the motions and related materials, it is recommended that the motions be granted and the plaintiff's third amended

---

[1]For the convenience of the reader of this document in electronic format, hyperlinks to the court's record and to authority cited have been inserted. No endorsement of any provider of electronic resources is intended by the court's practice of using hyperlinks.

complaint be dismissed.

By way of relevant background, on February 15, 2011, the plaintiff filed the instant action, *pro se*, related to a land dispute. (Doc. No. 1)[2]. By order dated May 26, 2011, (Doc. No. 7), a subsequent filing by the plaintiff, (Doc. No. 5), was designated as an amended complaint, and it was directed that the amended complaint be served.

After having been granted an extension of time to respond to the amended complaint, (Doc. No. 15), on August 22, 2011, defendants Borgfield, Cavanaugh[3], Mendito, Pocono Ranch Lands Property Owners Association, Inc., and Simoncic, (herein after "Association defendants"), filed a motion to dismiss the amended complaint or, in the alternative, for a more definite

---

[2]The plaintiff cited diversity as the basis of this court's jurisdiction. It is clear however that the parties are all residents of Pennsylvania and, therefore, diversity jurisdiction does not exist. 28 U.S.C. §1332. That being said, the plaintiff also references various federal statutes. Affording the plaintiff the leeway she is due as a *pro se* litigant, the court proceeds to consider whether it maintains federal question jurisdiction over the plaintiff's claims.

[3]To the extent that the Association defendants' motion to dismiss the plaintiff's third amended complaint is not otherwise granted, it would appear that the plaintiff wishes to voluntarily withdraw her complaint against defendant Cavanaugh, as she has removed his name from the caption of her response to the Association defendants' motion to dismiss her third amended complaint and further indicates therein that "Property Manager David Cavanaugh has been removed as a defendant per plaintiff's RICO pleading statement . . ." (Doc. No. 62, p. 1).

statement, (Doc. No. 16).

On September 19, 2011, a motion to dismiss the amended complaint was filed on behalf of the Lehman Township Planning Commission and defendant Vollmer, (hereinafter "Lehman Township defendants"). (Doc. No. 21).

By order dated March 16, 2012, the court granted the defendants' motions to the extent that they sought a more definite statement and directed the plaintiff to file a second amended complaint. (Doc. No. 30). The plaintiff filed her second amended complaint on April 9, 2012. (Doc. No. 31).

On April 23, 2012, the Lehman Township defendants filed a motion to dismiss the plaintiff's second amended complaint, (Doc. No. 33), as did the Association defendants, (Doc. No. 34). The plaintiff prematurely filed a consolidated brief in opposition to the defendants' motions to dismiss her second amended complaint on May 7, 2012. (Doc. No. 42). On the same day, the Association defendants filed a brief in support of their motion to dismiss the second amended complaint, (Doc. No. 43), as did the Lehman Township defendants, (Doc. No. 44).

On May 22, 2012, the plaintiff filed a document, (Doc. No. 45), which was construed by the court as a third amended complaint, (Doc. No. 48).

Given that construction of the filing by the court, it was directed that the defendants' motions to dismiss the plaintiff's second amended complaint be dismissed without prejudice subject to re-filing, if necessary, in relation to the plaintiff's third amended complaint. (Doc. No. 49).

On July 2, 2012, the Association defendants filed a motion to dismiss the plaintiff's third amended complaint. (Doc. No. 50). On the same day, the Lehman Township defendants also filed a motion to dismiss the plaintiff's third amended complaint. (Doc. No. 52)[4]. Briefs in support of the respective motions were filed on July 13, 2012, (Doc. No. 57, Doc. No. 58). The plaintiff filed a brief in opposition to the Association defendants' motion to dismiss on July 16, 2012, (Doc. No. 60), and a brief in opposition to the Lehman Township defendants' motion to dismiss on July 27, 2012, (Doc. No. 62).

The defendants' motions to dismiss are brought pursuant to the provisions of Fed.R.Civ.P. 12(b)(6). This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no

---

[4]The Lehman Township defendants filed their motion, in the alternative, as a motion for summary judgment; however, they failed to file a statement of facts with supporting record citations and materials as required pursuant to L.R. 56.1. As such, the court considers the motion only as one to dismiss the plaintiff's third amended complaint.

claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) (abrogating "no set of facts" language found in Conley v. Gibson, 355 U.S. 41, 45–46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. 544. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the plaintiff's cause of action. Id. Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotations marks omitted) (quoting Twombly, 550 U.S. 544).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit

to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on other parts of the record in determining a motion to dismiss. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

Taking the allegations of the plaintiff's third amended complaint as true for purposes of the instant report, the plaintiff's uncle, John Grusha, purchased a parcel of property, ("Lot 986"), on November 16, 1973, from Pocono Ranch Lands, Lmtd., for a price of $8,000[5].

On February 20, 1991, Mr. Grusha conveyed title to the property to he

---

[5]A number of the plaintiff's allegations relate to a time period prior to her ownership of the property in question or are brought by the plaintiff on behalf of her aunt. As discussed more fully herein, the court is recommending that any claims related to the period of time preceding the plaintiff's ownership of the property or brought on behalf of the plaintiff's aunt be dismissed. Given this, in discussing the plaintiff's claims, the court sets forth only those allegations which provide relevant background and which relate to the plaintiff's ownership of the property. In addition, only those claims brought on the plaintiff's behalf will be discussed herein.

and his wife, Mary Grusha a/k/a Mary Motidi Goriah, as tenants by the entirety. (Doc. No. 41, ¶18; Doc. No. 58, Ex. A). Upon Mr. Grusha's passing, on March 24, 1991, Mrs. Grusha became sole owner of the property.

On November 5, 2008, Mrs. Grusha granted the plaintiff a power of attorney for purposes of selling the property. (Doc. No. 41, ¶46). Subsequently, on March 17, 2010, Mrs. Grusha conveyed title to the property to the plaintiff. (Doc. No. 41, ¶53).

After acquiring the property, in May 2010, the plaintiff applied to Lehman Township for a variance or special exception permit. (Doc. No. 41, ¶71). A hearing was held on June 30, 2010, after which the plaintiff's application was denied. (Id. at ¶76). The plaintiff alleges that the Township's hearing board improperly considered her application. (Id. at ¶¶75-78). However, the plaintiff did not appeal the decision of the hearing board.

In June 2010, the plaintiff hired a contractor to perform percolation tests or soil tests, which she alleges were delayed for two days as a result of an easement, which the plaintiff alleges was illegal. (Doc. No. 41, ¶¶81-88). The plaintiff alleges that the Association defendants and Township defendants have conspired to control the property at issue with the illegal easement. (Doc. No. 41, ¶93).

The plaintiff has set forth five counts in her third amended complaint, labeled as follows: Count One, Breach of Contract; Count Two, Negligence; Count Three, Lack of Honest Government Services; Count Four, Illegal Easment (sic); Count [Five][6], Civil Conspiracy to Deprive Plaintiff of Her Property Rights.

In addressing the presently pending motions to dismiss, the court notes that, in addition to the allegations set forth above, the plaintiff has set forth numerous allegations relating to events which occurred in between the time that her uncle acquired the property in 1973 and the time she obtained ownership in 2010. In addition, the plaintiff attempts to bring claims on behalf of her aunt. However, all defendants have argued, and the court agrees, that as the sole plaintiff in this action, the plaintiff has no standing to bring claims relating to the property in question prior to her ownership of the property or on her aunt's behalf.

The United States Supreme Court has held that in order for a party to assert standing, she must show that: 1) she has suffered some actual injury or threatened harm, 2) which fairly can be traced to the challenged action, and 3) which is capable of judicial redress. Valley Forge Christian College v.

---

[6]The plaintiff apparently inadvertently labeled this count as "Count Four" as well.

8

Americans United for Separation of Church and State, 454 U.S. 464, 472 (1982). According to the plaintiff's own allegations, the plaintiff was not the legal title-holder of the property at issue until 2010. In view of this, even if the court were to address plaintiff's allegations between 1973 and 2010, it would be unable to fashion a remedy due to the fact that the plaintiff has not established any legal right to the property during that time. Cf. Cannon Bros., Inc. v. D'Agostino, 514 A.2d 614 (Pa.Super. 1986) (a party seeking to enjoin invasion of his right in and to real property must demonstrate that he has a clear right to the property in question).

In her materials, the plaintiff indicates that she, in fact, has standing to assert claims prior to her ownership of the property. To this extent, she states that she is the executor of her late uncle's estate; that the estate is still open as evidenced by a trust she manages for her uncle's son from a previous marriage; and that, because the estate is still opened, she can assert claims relating to the property on behalf of her aunt.

Despite the plaintiff's claims, the third amended complaint reflects that Mr. and Mrs. Grusha held the property at issue as tenants by the entirety. Pennsylvania law describes such tenancy as follows:

> It is well established that tenancy by the entireties is based on the common law concept that husband and wife were but one legal

entity. Biehl v. Martin, 236 Pa. 519, 522, 84 A. 953, 954 (1912). Tenancy by the entireties is a form of co-ownership of property, either real or personal, by a husband and wife, with its essential characteristic being that "each spouse is seised per tout et non per my, i.e. of the whole or the entirety and not of a share, moiety or divisible part." In re Gallagher's Estate, 352 Pa. 476, 478, 43 A.2d 132, 133 (1945) (citations omitted). Entireties property is characterized by the unities of interest, title, time, and possession, and by the right of survivorship. Stemniski v. Stemniski, 403 Pa. 38, 41, 169 A.2d 51, 52 (1961); Berhalter v. Berhalter, 315 Pa. 225, 227, 173 A. 172, 173 (1934). Upon the death of one spouse the surviving spouse takes no new estate; the only change is in the properties of the legal entity holding the estate. Biehl, 236 Pa. at 523, 84 A. 953, citing Stuckey v. Keefe, 26 Pa. 397 (1856). "'The whole estate continues in the survivor the same as it would continue in a corporation after the death of one of the corporators. This has been settled law for centuries.'" Id.

In re Estate of Maljovec, 602 A.2d 1317, 1319 (Pa.Super. 1991). As such, upon Mr. Grusha's passing, the property at issue passed not to his estate, but to Mrs. Grusha as sole owner in its entirety. Thus, the status of plaintiff as executor of Mr. Grusha's estate is irrelevant and does not give plaintiff standing to bring the instant action prior to her ownership of the property.

Moreover, to the extent that the plaintiff attempts to assert claims on behalf of Mrs. Grusha, although the plaintiff is entitled to represent herself *pro se*, she 'may not appear *pro se* in the cause of another person or entity.'" See Schneller v. Crozer Chester Medical Center, et al., 276 Fed. Appx. 169, 170 n.1 (3d Cir. 2008). Thus, the plaintiff is not entitled to assert claims on behalf

of her aunt in this action.

In light of the above, the defendants' motions to dismiss the plaintiff's claims arising prior to her acquisition of the property at issue and the claims brought on behalf of the plaintiff's aunt should be granted as the plaintiff lacks standing to assert those claims. In light of this recommendation, the court will only address those claims alleged to have occurred after the plaintiff's acquisition of the subject property in 2010 and brought on her own behalf.

Although not set forth in the enumerated counts of the third amended complaint, the plaintiff references violations of her rights pursuant to 42 U.S.C. §§1981 and 1982. In each of the pending motions, the defendants move to have these claims dismissed. In considering these claims, 42 U.S.C. §1981 provides, in pertinent part, as follows:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

To prove a violation under §1981, the plaintiff must demonstrate that: 1) she is a member of a racial minority; 2) the defendants intended to discriminate against her on the basis of her race; and 3) discrimination

11

occurred in relation to one or more activities enumerated in §1981, including the right to make and enforce contracts. Brown v. Phillip Morris, Inc., 250 F.3d 789, 797 (3d Cir. 2011) (citations omitted).

Title 42 U.S.C. §1982 provides that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." In order to state a claim under §1982, the plaintiff must allege sufficient facts to establish: (1) the defendants' racial animus; (2) intentional discrimination by the defendants; and (3) the defendants deprived the plaintiff of her rights because of her race. See Brown v. Philip Morris, Inc., 250 F.3d 789, 797 (3d Cir. 2001).

Upon review of the plaintiff's third amended complaint, although the plaintiff references violations of §§1981 and 1982, she has not otherwise set forth any facts of racial discrimination whatsoever. In fact, the plaintiff never even identifies herself as a member of a racial minority. In her brief opposing the defendants' motions to dismiss, the plaintiff apparently concedes that she has not stated a racial discrimination claim on behalf of herself, but indicates that she ". . . asserts claims for her aunt, Mrs. Grusha (born in South America, is timid, easily influenced, and black) . . ." (Doc. No. 60, p. 4). However, as

indicated above, the plaintiff is the only named plaintiff to this action and has no standing to bring claims on behalf of her aunt. Therefore, even though the plaintiff does not list the claims in her enumerated counts, to the extent that the plaintiff is attempting to assert claims pursuant to §§1981 and 1982, the defendants' motions to dismiss the plaintiff's third amended complaint should be granted.

Also in her third amended complaint, the plaintiff references a claim pursuant to 42 U.S.C. §1985[7]. In each of their motions, the defendants move to have this claim dismissed as well.

Section 1985(3) allows an action to be brought by one harmed by a conspiracy formed "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. §1985(3); Farber v. City of Patterson, 440 F.3d 131, 134 (3d Cir. 2006). To state a claim under Section 1985(3), the plaintiff must allege: (1) a conspiracy; (2) for the purposes of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is

---

[7]Again, this is not listed as a separate count, but only referenced in the allegations of her complaint.

13

injured in his person or property or deprived of any right or privilege of a citizen of the United States. Farber, 440 F.3d at 134 (quoting United Bhd. of Carpenters & Joiners v. Scott, 463 U.S. 825, 828–29 (1983)). This civil rights provision was not "intended to provide a federal remedy for 'all tortious, conspiratorial interferences with the rights of others,' or to be a 'general federal tort law.'" Id. at 135 (quoting Griffin v. Breckenridge, 403 U.S. 88, 101–02 (1971)). Rather, the plaintiff must allege "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." Id. (quoting Griffin, 403 U.S. at 102). Thus, the conspiracy alleged must have been motivated by discriminatory animus against an identifiable class, and the discrimination must have been invidious. Id.

Again, the plaintiff has not alleged any racial animus in her third amended complaint. She argues, however, in her opposing materials that she was subject to "class based animus" in that she was an "outsider" who did not reside within the community. First, the plaintiff fails to satisfy the identifiable class requirement of §1985. To this extent, the plaintiff must allege a "class-based, invidiously discriminatory animus behind the conspirators' action in order to state a §1985(3) claim." Farber, 440 F.3d at 135. The "use

14

of the word 'class' unquestionably connotes something more than a group of individuals who share a desire to engage in conduct that the §1985(3) defendant disfavors." Id. at 135-36 (holding that a plaintiff who claimed she was terminated because she was affiliated with the Administration of the Republican, ex-mayor, was not the member of an identifiable class because such a class is so subjectively defined that it cannot be characterized as an identifiable segment of the community by reference to objective criteria). Here, the plaintiff alleges the defendants discriminate against those individuals who own property but do not reside within the community development. At best, this is a group of individuals who engage in conduct disfavored by defendants. Thus, the plaintiff has not properly alleged the existence of class-based discrimination.

Moreover, even if the plaintiff had properly alleged an identifiable group, the type of discrimination alleged by the plaintiff is not invidious. "A conspiracy claim based upon Section 1985(3) requires a clear showing of invidious, purposeful and intentional discrimination between classes or individuals." Robinson v. McCorkle, 462 F.2d 111, 113 (3d Cir. 1972). "In order for victims of discrimination . . . to state a §1985(3) claim, it must be independently determined that discrimination on that ground is invidious in the same way

that discrimination directed at African-Americans is invidious." Farber, 440 F.3d at 141 (noting that the Third Circuit has found that discriminatory animus directed at women and the mentally ill may form the basis for a claim under §1985(3)). In contrast, victims of mere commercial or economic animus have not suffered such invidious discrimination. Id. In this case, discrimination on the basis of owning property but not living within the community development cannot be considered invidious. Instead, such discrimination is more closely analogous to discrimination on the basis of commercial or economic animus, rather than race based animus.

For the above reasons, the defendants' motions to dismiss the plaintiff's §1985 claim should be granted and the plaintiff's third amended complaint should be dismissed on this basis.

Next, it appears that the plaintiff is attempting to allege a violation of her rights under 42 U.S.C. §1983 in Counts Three and Five of her third amended complaint. To this extent, in Count Three relating to the denial of the variance or special exception permit in June 2010, the plaintiff alleges deprivations of "her U.S. Constitutional due process rights and entitlement to an honest and impartial hearing."[8] In Count Five, the plaintiff apparently alleges an unlawful

---

[8]Although the only specific reference of §1983 is in Count Five of the
(continued...)

taking of her property under the Fifth and Fourteenth Amendments in relation to what she has termed the "illegal easement."

In considering the above claims, the plaintiff does not specify whether she is alleging a violation of her procedural due process rights, substantive due process rights, or both. To the extent that she is alleging a violation of her procedural due process rights, to successfully plead such a claim by way of §1983, the plaintiff must assert that the defendants, acting under color of state law, deprived her of a protected property interest, and that the local and state procedures for challenging the deprivation are inadequate. DeBlasio v. Zoning Bd. of Adjustment, 53 F.3d 592, 597 (3d Cir. 1995), *overruled on other grounds by* United Artists Theatre Circuit, Inc. v. Township of Warrington, 316 F.3d 392, 400 (3d Cir. 2003).

A state provides constitutionally adequate procedural due process when it provides "reasonable remedies to rectify a legal error by a local administrative body." Id. The Third Circuit has held that Pennsylvania's procedures for challenging zoning ordinances and related matters provide adequate procedural due process. Rogin v. Bensalem Township, 616 F.2d

---

[8](...continued)
plaintiff's complaint setting forth the RICO claim, the plaintiff generally alleges violations of her due process rights in Count Three.

680 (3d Cir. 1980), *cert. den.* 450 U.S. 1029 (1981); Bello v. Walker, 840 F.2d 1124 (3d Cir. 1988), *cert. den.* 488 U.S. 801. When a state affords a method by which to challenge administrative decisions of the type at issue in this case, courts have found that the state provides adequate procedural due process, regardless of whether the plaintiff avails herself of that method. Id. (quoting Midnight Sessions, Ltd. v. Philadelphia, 945 F.2d 667, 680 (3d Cir. 1991), *overruled on other grounds by* United Artists, 316 F.3d at 400). See also Midnight Sessions, 945 F.2d at 680-81 (holding that city provided adequate procedural due process where judicial mechanism existed under which to challenge administrative decision to deny application for dance hall licenses); 8131 Roosevelt Blvd. Corp. v. City of Philadelphia, 2003 WL 57903 (E.D.Pa. Jan. 6, 2003) (dismissing plaintiff's procedural due process claim stemming from city's denial of variance, because city code and state law provided adequate procedures to challenge denial); Sauers v. Bensalem Twp., 2003 U.S. Dist. LEXIS 4706, at *6 (E.D.Pa. March 5, 2003) (finding amended complaint failed to state procedural due process claim because defendant township afforded full judicial mechanism for challenging administrative land use decisions and plaintiff made no allegations from which court could infer that procedure was unconstitutional).

Here, the plaintiff admits that she had the right to appeal the decision denying her a variance or land use exception, but failed to do so. As such, she has no procedural due process claim pursuant to §1983 in this court and the defendants' motions to dismiss any such claim should be granted.

To the extent that the plaintiff is attempting to assert a substantive due process claim, in order to state a substantive due process claim, the plaintiff must prove that she was deprived of a protected property interest by arbitrary or capricious government action. Sameric Corp. v. City of Philadelphia, 142 F.3d 582, 590 (3d Cir. 1998). In order to demonstrate that an action was arbitrary or capricious, the plaintiff must allege facts that demonstrate that the government defendant's conduct "shocks the conscience". See United Artists Theatre Circuit, Inc. v. Twp. of Warrington, 316 F.3d 392, 394 (3d Cir. 2003). Whether conduct shocks the conscience depends upon the facts of the particular case, but is limited to "only the most egregious official conduct." Id. at 399-400. In land-use cases, mere allegations of bias, bad faith, or improper motives will not suffice to state a claim for deprivation of substantive due process. Rather, allegations that rise to the level of corruption or self-dealing are typically required to demonstrate that an official's actions shocks the conscience. Eichenlaub v. Twp. of Indiana, 385 F.3d 274, 285 (3d Cir. 2004).

In relation to the denial of the variance, the court finds that the plaintiff's third amended complaint fails to allege sufficient facts that could establish the conduct of the named defendants shocks the conscience. To this extent, although the plaintiff alleges that defendants Menditto and Vollmer misrepresented the facts which were the basis for the plaintiff's application for the variance, it was the Zoning Hearing Board which was the ultimate decision maker with respect to the application. The Zoning Hearing Board denied the plaintiff's application for a variance and the plaintiff did not contest that decision through the appropriate state process. In addition, the plaintiff has failed to name the Zoning Hearing Board or its members as defendants in this action. Therefore, the court finds that the plaintiff has failed to state a substantive due process claim and the defendants' motions to dismiss should be granted on this basis.

Finally, to the extent that the plaintiff is attempting to allege that the denial of the variance or the "illegal easement" on her property constitute a taking in violation of the Fifth and Fourteenth Amendments, her claim is not ripe because she has not sought compensation through Pennsylvania's Eminent Domain Code. The Fifth Amendment does not proscribe the taking of property, it proscribes taking property without just compensation.

[Williamson Cnty. Reg'l Planning Com'n v. Hamilton Bank of Johnson City, 473](#) [U.S. 172, 194 (1985)](#). "Because the Fifth Amendment proscribes takings without just compensation, no constitutional violation occurs until just compensation has been denied. The nature of the constitutional right therefore requires that a property owner utilize procedures for obtaining compensation before bringing a Section 1983 action." [Id. at 194 n.13](#).

Furthermore, the Fifth Amendment does not require just compensation be paid in advance of, or contemporaneously with, the taking; all that is required is that a "reasonable, certain and adequate provision for obtaining compensation" exist at the time of the taking. [Id. at 194](#). (internal citations omitted). If the government has provided an adequate process for obtaining compensation, and if resort to that process "yield[s] just compensation," then the property owner "has no claim against the Government" for a taking. [Id. at 194-95](#). (internal citations omitted). If a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation. [Id. at 195](#).

In Pennsylvania, the Eminent Domain Code provides inverse condemnation procedures through which a landowner may seek just

compensation for the property. <u>See</u> 26 Pa.C.S.A. §§502(c), 709; Chainey v. Street, 523 F.3d 200, 223 (3d Cir. 2008). These statutory procedures have been found to "fully protect . . . the rights of the property owner and guarantee . . . to [them] the constitutional safeguards to which [they] [are] entitled, including appropriate appellate review." Valley Forge Golf Club v. Upper Merion Twp., 221 A.2d 292, 293 (Pa. 1966); Kao v. Red Lion Mun. Auth., 381 F.Supp. 1163, 1166 (M.D.Pa. 1974) ("The Pennsylvania Constitution and Eminent Domain Code fully preserve all the constitutional rights due plaintiffs with respect to the public taking, injury or destruction of private property.").

Here, the plaintiff has failed to allege that she sought any compensation for the alleged taking of her property through either the denial of the variance or what she terms and "illegal easement." Because she has failed to do so, any claim of a taking under the Fifth and Fourteenth Amendments are not ripe for disposition and the defendants' motions to dismiss the plaintiff's third amended complaint should be granted on this basis.

Finally, the plaintiff alleges violations of the civil RICO statute, 18 U.S.C. § 1962(c). Section 1962(c) of RICO provides as follows:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a

pattern of racketeering activity . . .

To state a claim under §1962(c), the plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Camiolo v. State Farm Fire & Cas. Co., 334 F.3d 345, 364 (3d Cir. 2003) (quoting Sedima S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496 (1985)).

Racketeering activity is defined in a list of various state and federal offenses, 18 U.S.C. §1961(1), which include mail fraud and wire fraud statutes, 18 U.S.C. §§1341 and 1343. Acts of racketeering activity are known as predicate acts.

Here, the plaintiff alleges the predicate acts are violations of the mail and wire fraud statues in relation to a 2004 re-zoning of the property at issue in order to "exchange residential properties for commercial properties and unjustly [collect] residential assessments from commercial property owners . . ." The plaintiff further alleges that the frauds continued with the "illegal easement" which was entered on the property in 2007.

The elements of the predicate acts of mail and wire fraud are "(1) the existence of a scheme to defraud; (2) the participation by the defendant in the particular scheme with specific intent to defraud; and (3) the use of the United States mail or of wire communications in furtherance of the fraudulent

23

scheme." United States v. Syme, 276 F.3d 131, 142 n.3 (3d Cir. 2002).

The requirements for a civil RICO claim predicated upon mail or wire fraud have been delineated as follows: (1) that the defendant intentionally participated, (2) in a scheme to defraud, (3) the plaintiff of money or property, (4) by means of material misrepresentations, (5) using the mails or wires, (6) and that the plaintiff relied on a misrepresentation made in furtherance of the fraudulent scheme, (7) that such misrepresentation would have been relied upon by a reasonable person, (8) that the plaintiff suffered injury as a result of such reliance, and (9) that the plaintiff incurred a specifiable amount of damages. Walter v. Palisades Collection, LLC, 480 F.Supp.2d 797, 803 (E.D.Pa. 2007) (citing Sikes v. Teleline, 281 F.3d 1350, 1360-61 (11th Cir. 2002)).

To have standing under RICO, (1) a plaintiff's "business or property" must have been "injured" (2) "by reason of" the defendant's RICO violation. Walters, supra (citing 18 U.S.C. §1964(c); Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 268 (1992)).

To meet the injury requirement, a plaintiff must allege "a concrete financial loss and not mere injury to a valuable intangible property interest." Id. (citing Maio v. Aetna, Inc., 221 F.3d 472, 483 (3d Cir. 2000)). In order to

satisfy this requirement, the plaintiff must set forth "allegations of proof and actual monetary loss, i.e., an out-of-pocket loss." Id.

Here, in relation to her RICO claim, while the plaintiff alleges damages generally, she has set forth no specific out-of-pocket expenses related to her claims. Therefore, her allegations are insufficient to meet this first prong.

Moreover, even if the plaintiff had alleged sufficient injury, the plaintiff must establish that the RICO violation was the proximate cause of her injury. Id. at 805 (citing Anza v. Ideal Steel Supply Corp., 547 U.S. 451 (2006); Holmes, 503 U.S. at 268)). In order to establish proximate cause, the plaintiff must allege "some direct relation between the injury asserted and the injurious conduct alleged," a "but for" cause will not suffice. Id. (citing Holmes, 503 U.S. at 268)). Moreover, in establishing proximate cause, "[r]eliance is a necessary component of proximate causation for a civil RICO action predicated on fraud." McCoy-McMahon v. Godlove, 2011 WL 4820185, *11 (E.D.Pa.) (quoting Walter, 480 F.Supp.2d at 809)). Therefore, if the plaintiff did not rely on the defendant's alleged misrepresentation, the misrepresentation cannot be the proximate cause of the plaintiff's injuries.

Here, the plaintiff has not alleged any actual reliance on any misrepresentations made by the defendants. In fact, the plaintiff alleges that

the RICO violations began with the re-zoning in 2004 and continued with the placement of the "illegal easement" on the property in 2007, both of which occurred prior to the plaintiff's purchase of the property and both of which she admittedly was aware of through the dealings on behalf of her uncle and aunt. In addition, although the plaintiff alleges that she was forwarded fraudulent annual fee and assessment bills and was badgered to give the Association the property without adequate compensation, there is no indication that she either remitted the amounts on the bills or that she has given up any right to her property. In fact, the plaintiff's third amended complaint indicates that she was aware of the alleged misrepresentations and actions of the defendants prior to her ownership of the property and has been taking affirmative action in relation to these matters. Where a plaintiff knows a representation is untrue, she cannot sustain a civil RICO claim predicated on fraud on the basis of the representation. See Walters, 480 F.Supp.2d at 808 (citing Brokerage Concepts, Inc. v. U.S. Healthcare, Inc., 140 F.3d 494, 528-29 (3d Cir. 1998) (holding that the defendant did not violate the mail fraud statute by seeking an audit of the plaintiff because the plaintiff knew the defendant's "true motivation" for seeking the audit); Ideal Dairy Farms, Inc. v. John Labatt, Ltd., 90 F.3d 737, 747 (3d Cir. 1996) (holding that there could be no mail fraud

predicate based on the defendant's "scheme" to charge the plaintiff more than the contract price because the plaintiff admitted that it knew that the defendant was not complying with the contract). Because the plaintiff has not sufficiently alleged reliance, she cannot show proximate causation. Accordingly, she cannot satisfy the RICO standing requirement.

As a final matter, having dismissed the plaintiff's federal law claims, the court is left only with her state law claims. Under 28 U.S.C. §1367, a federal court may exercise jurisdiction over state law claims "that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." See Regalbutto v. City of Philadelphia, 937 F.Supp. 374, 377 (E.D.Pa. 1995). "Stated otherwise, a prerequisite to the federal court's exercise of pendant jurisdiction over a plaintiff's state law claims is that at least one claim based on the court's original diversity or federal question jurisdiction is before the court." Kelley v. Bradford County, 2010 WL 1136313, at *10 (M.D.Pa.) (declining to exercise supplemental jurisdiction over plaintiff's state law claims, where dismissal of the claims over which the court had original jurisdiction occurred by way of a motion for summary judgment). For the reasons stated above, the court should dismiss the plaintiff's federal

claims and, consequently, should also decline to exercise supplemental jurisdiction over the remaining state law claims.

On the basis of the foregoing, **IT IS RECOMMENDED THAT:**

**(1)**    the Association defendants' motion to dismiss the plaintiff's third amended complaint, **(Doc. No. 50)**, be **GRANTED**; and

**(2)**    the Lehman Township defendants' motion to dismiss the plaintiff's third amended complaint, **(Doc. No. 52)**, be **GRANTED**.

s/ *Malachy E. Mannion*

**MALACHY E. MANNION**
**United States Magistrate Judge**

**Date: December 20, 2012**